### HARRY ZARAFONETIS v. THE STATE.

No. 4525.    Decided November 7, 1917.

**1.—Aggravated Assault—Recognizance—Practice on Appeal.**

Where the appeal was dismissed for want of a sufficient recognizance and a proper recognizance was thereafter filed in the lower court, the cause is reinstated.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of assault to murder, and a conviction of aggravated assault, the evidence supported a conviction although conflicting, there was no reversible error.

**3.—Same—Evidence—Motive.**

Where the defendant sought to connect the prosecuting witness as the party who was responsible for his being shot on a former occasion, there was no error in permitting the State to prove a motive by the defendant for shooting prosecuting witness on said occasion, and also to show animus of defendant towards said prosecuting witness.

**4.—Same—Evidence—Conversation—Impeaching Witness.**

Where, upon trial of assault to murder, the defendant denied that the prosecuting witness told defendant that he did not want any more trouble

over a former killing of witness' cousin by defendant's brother-in-law, there was no error in permitting the State to show that such conversation with defendant had taken place.

**5.—Same—Evidence—Testimony by Other Witness.**

Upon trial of assault to murder, there was no error in admitting testimony by an expert as to whether the pistol of prosecuting witness had been fired, but even if it be held that such testimony was erroneously admitted, the same was not reversible error because another witness had testified to the same fact without objection.

**6.—Same—Evidence—Animus of Witness—Motive.**

Upon trial of assault with intent to murder, where defendant's brother-in-law had testified to a material fact in his defense, there was no error in permitting the State on cross-examination to show that the witness had some time before shot and killed the cousin of the prosecuting witness in the instant case and had been convicted thereon, and was then under suspended sentence; besides, the same fact was proved by defendant himself.

Appeal from the District Court of Bell. Tried below before the Hon. F. M. Spann.

Appeal from a conviction of aggravated assault; penalty, a fine of one hundred dollars and twelve months imprisonment in the county jail.

The opinion states the case.

*W. W. Hair,* for appellant.—On question of impeaching witness: Hoy v. State, 45 S. W. Rep., 916; Brundige v. State, 95 id., 527; Conway v. State, 26 id., 401; Hart v. State, 15 Texas Crim. App., 234.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of defective recognizance: Lindsey v. State, 59 Texas Crim. Rep., 273.

PRENDERGAST, JUDGE.—Appellant was convicted of an aggravated assault. The Assistant Attorney General's motion to dismiss the appeal because of a fatally defective recognizance must be granted. The recognizance is so fatally defective as to give this court no jurisdiction.

Appeal dismissed.

PRENDERGAST, JUDGE.—Very soon after this case was dismissed because of a fatally defective recognizance appellant entered into a correct recognizance under the statute and has filed herein a properly certified copy thereof. The cause is, therefore, reinstated.

Appellant was indicted for an assault with intent to kill George Zacharias, and was tried therefor. On the trial the jury convicted him of an aggravated assault.

The testimony by the State made a clear case of an assault with intent to kill as alleged. It also clearly authorized appellant's conviction for an aggravated assault, and disproved appellant's claimed self-defense. The evidence was conflicting, however, and appellant's testimony, if it had been believed, would have been sufficient to show that he shot George Zacharias in self-defense.

In the whole testimony by the State, and up to the time it rested, it introduced no testimony at all about John Demas; who he was, or what he had done, or that he was related in any way to appellant. As soon as the State rested appellant, first himself testified, and among other things he testified that said Demas was his brother-in-law and that they lived together in the same house in Temple, and it was shown that they had done so for years until up to the time of this alleged offense and afterwards. He also testified that several months before this offense was charged he, himself, had been shot in Temple by someone else and the drift of his whole testimony, and other testimony introduced by him, was to seek to connect said prosecuting witness as a party to his being shot on that occasion. In cross-examination of him, and by other testimony, the State had the right to prove a motive by appellant for shooting prosecuting witness on this occasion; and also to show animus of appellant toward said prosecuting witness and the extent and cause therefor. Thereupon the State, upon cross-examination of him, asked him what his feelings toward said prosecuting witness was. He answered, "I haven't got any love for him." Appellant did not object to this, but the State thereupon proceeded to further ask him if said prosecuting witness did not prosecute his brother-in-law, said Demas, for killing his, said prosecuting witness' cousin. He at first denied that he knew that but said he knew that Demas was convicted of killing said prosecuting witness' cousin, and after asking other questions along the same line, and appellant parrying them, the State finally asked him that if prior to the time of the killing of the prosecuting witness' cousin by his brother-in-law, Demas, he and the prosecuting witness were not friendly, if that was not the matter that caused his unfriendliness against the prosecuting witness, and he replied that that was the case; and further, that since then he had not been friendly with the prosecuting witness. The court admitted this testimony, as he states in modification of appellant's bill, to show motive by defendant and his animus toward the prosecuting witness.

That testimony of the animus of an adverse witness to either side and the extent and cause of it, is admissible is so well established by all the authorities that there is no necessity of citing them or discussing the question; but see 1 Branch's Ann. P. C., p. 93, for a collation of a large number of authorities. It is also so well established that the State can introduce testimony tending to show a motive on the part of an accused for any shooting or killing that it is unnecessary to discuss that question or cite authorities; but on this point see 2 Branch's Ann. P. C., sec. 1879 et seq., under his treatment of "motive." This testimony objected to by appellant was admissible.

For the purpose of impeaching the appellant, as well as a proper cross-examination of appellant on testimony that he had himself given, the State had the right to lay the predicate to impeach him under the circumstances by asking him if a few days after the killing of the prosecuting witness' cousin by appellant's brother-in-law, Demas, if

the prosecuting witness did not tell him, in the presence of Hugh Smith, the sheriff of that county, that he did not want any more trouble over that killing; that he had a family and did not want any more trouble about it. Appellant denied that the prosecuting witness had any such conversation with him at the time asked about, or told him any such thing; the court did not err in permitting said prosecuting witness to testify that he did have such conversation with appellant at the said time and place. This testimony, under the circumstances, was pertinent and admissible for the purpose of impeaching appellant.

· Appellant introduced Mr. Salsberry, a policeman of Temple, who testified that on the night appellant was shot by someone, some seven or eight months before this shooting, that he with other officers had bloodhounds brought to the park where that shooting occurred, and that they · trailed from there to said prosecuting witness' house and stopped there. This was introduced on appellant's theory that said prosecuting witness was one of the parties who had shot him on said occasion or was connected with whoever did shoot him. On cross-examination he testified, in answer to the State's question that some few minutes after the shooting in this case he was notified and went to the prosecuting witness' house, reaching there and finding him in bed fifteen minutes after the shooting; that said prosecuting witness at the time gave to Mr. Fisher, who was with him, his gun, and that he examined it and saw that it had five loaded and one empty chamber. That he had been a peace officer about three years and had a little experience with firearms; that the shells of the pistol of said prosecuting witness were loaded with black powder. The State then asked him if the gun had been recently fired and he answered: "No, sir; I don't think it had." He was asked: "Have you had experience with firearms?" He answered: "Not with pistols." He was asked if he knew the effect of firing a charge of black powder through a gun; if it leaves an odor in the barrel, and he answered: "Yes, sir; it does." He was asked if there was anything in the barrel of that gun of that character that would indicate it had recently been fired, and he answered that there was not. The appellant objected to these questions and answers of the witness, among others, for the reason that he claimed it was immaterial and irrelevant and in appellant's absence was hearsay; and because the witness had not qualified as an expert on firearms or the effects of the discharge of powder. The bill does not show what other examination, if any, was made of the witness as to his knowledge about the matter he testified to. His objection that the witness had not qualified as an expert was mere objection, not approved as a fact by the judge. From the bill we can not tell that the witness was not an expert sufficiently to have testified on the subject, and in deference to the court's ruling on the question this bill would not present reversible error. Holder v. State, 194 S. W. Rep., 162. But even if it should be held that the court erroneously admitted the testimony of this witness it would not present reversible error because Mr.

Fisher, who was with said witness at the time, testified fully to the same state of fact without any objection at all by appellant, said Fisher testifying that just after the shooting he went to the prosecuting witness' house (he was with said Salsberry), found him there and asked for his pistol, which he gave. That he had been an officer for twelve years and had had experience with firearms. He told about the shells in the pistol being loaded with black powder; that he always thought he could tell after a gun had recently been fired with black powder because it leaves a black dim stain in it and smells like burned powder; that he did not think the gun had been recently fired. "I examined it for the purpose of ascertaining whether it was fired or not. I pushed the hulls out and held it between me and the light and I could not tell it if it had." The law is that even if inadmissible testimony is admitted over an accused's objection, it does not present reversible error when other witnesses testify to the same thing without any objection by the accused. See 2 Vernon's Crim. Stat., p. 904, where he collates a large number of cases so holding.

Appellant introduced his said brother-in-law, John Demas, as a witness for him, and he gave material testimony in his defense. The State upon cross-examination of him proved by him that he had some time before shot and killed the cousin of said prosecuting witness and that he had been indicted for his murder, pleaded guilty to manslaughter and his sentence had been suspended. This testimony was admissible for the purpose of showing the animus of this witness against said prosecuting witness, and also on the issue of appellant's motive in shooting said prosecuting witness. Besides, the State proved the same state of fact by appellant himself to which there was no objection.

No reversible error is shown in this case. The judgment is affirmed.

*Affirmed.*