C. F. HAMILTON v. THE STATE.

No. 4659. Decided December 12, 1917.

Rehearing denied January 23, 1918.

**1.—Theft—Automobile—Bill of Exceptions—Evidence.**

Upon trial of theft of an automobile there was no error in admitting testimony of the person who purchased the automobile as to said number of said automobile, which was the same as the number on the one which was stolen.

**2.—Same—Evidence—Identification.**

Upon trial of the theft of an automobile, which at the time of its theft contained certain papers and other articles, which were afterwards recovered by parties who found them along the roadside, there was no error in admitting testimony that the owner himself and others found these articles, and which testimony corroborated the written confessions of the defendant.

**3.—Same—Principals—Charge of Court.**

Where, upon trial of the theft of an antomobile, the confession of the defendant showed that other parties assisted him in the theft, there was no error in the court's charge on the law of principals.

**4.—Same—Confessions—Charge of Court.**

Where, upon trial of the theft of an automobile, the defendant claimed that he did not make the confession introduced by the State voluntarily and willingly, and there was evidence pro and con. and the court submitted the issue to the jury, there was no reversible error.

**5.—Same—Alibi—Charge of Court.**

Where, upon trial of the theft of an automobile, the evidence raised the issue of an alibi, the court properly submitted a charge thereon.

**6.—Same—Principals—Alibi—Conflict of Charge.**

Where, upon rehearing, the appellant contended that there was a direct conflict between the charge of the court on the subject of principals and that of alibi, but the record showed that the defendant's objections did not point out a conflict when the charge was submitted to him before the same was read to the jury, but objected only thereto because the evidence did not raise the issue of principals, the same can not be considered on appeal. Besides the appellant took no bill of exceptions at the time.

**7.—Same—Article 743, Code Criminal Procedure—Objections to Charge of Court.**

Under article 743, C. C. P., amending article 723, C. C. P., it is necessary that an objection to the charge of the court must be made before the same is

read to the jury, and that otherwise this court will not consider the same. Following Holder v. State, 194 S. W. Rep., 163, and other cases.

Appeal from the District Court of Tarrant. Tried below before the Hon. R. E. L. Roy.

Appeal from the conviction of the theft of an automobile over the value of fifty dollars; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Simpson & Estes,* for appellant.—On question of charge of court and conflict therein: McDonald v. State, 46 Texas Crim. Rep., 4; Holmes v. State, 49 Texas Crim. Rep., 348, 91 S. W. Rep., 588; Edens v. State, 47 Texas Crim. Rep., 529, 84 S. W. Rep., 828; Barnett v. State, 47 Texas Crim. Rep., 299, 80 S. W. Rep., 1013; Frugur v. State, 99 S. W. Rep., 1014; Joy v. State, 41 Texas Crim. Rep., 46, 51 S. W. Rep., 933; Criner v. State, 41 Texas Crim. Rep., 290, 53 S. W. Rep., 873· McAlister v. State, 45 Texas Crim. Rep., 258, 76 S. W. Rep., 760.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of defective bill of exceptions: Aven v. State, 77 Texas Crim. Rep., 37, 177 S. W. Rep., 82.

PRENDERGAST, JUDGE.—Appellant was convicted of theft of an automobile of more than the value of $50 and his punishment assessed at three years in the penitentiary.

The uncontradicted testimony shows that in the early part of the night of February 5, 1917, Dr. Cloud's automobile was stolen from in front of his residence, at a certain locality in Fort Worth, and at the time it was stolen that he had therein certain instruments which he used as a veterinary surgeon and also certain papers; that his said automobile was that night driven to Dallas and very early the next morning was sold to a certain garage company in Dallas. The automobile was traced down and later recovered. A few days after the theft appellant and others were arrested accused of the theft of it. Soon after his arrest appellant, strictly in conformity with the statute regulating confessions, made and signed a written confession in which he stated where he lived in Fort Worth; that he knew Gordon Brock, Joe Cox and Otis Runyon; that on Friday evening about 6 o'clock he and Cox went to the home of Brock; they talked a while and then went up town to a certain pool hall and played pool a while therein when Runyon came in. The confession proceeds as follows: "Brock told us that he knew where he could sell a car. We decided to go out and steal one. We went out on the south side but did not get a chance to get one. We came back to town on a Summit Avenue car. We got off of this car at about the eleven hundred block on West Seventh

Street. We walked over to West Fifth Street and across several other streets looking for a car, but didn't find one. When we got to Lamar Street we came south. We found a Ford five-passenger car on Lamar between Seventh and Tenth. Gordon Brock went to this car and cranked it and got in and drove it off. I got in it in the middle of the block. The other two boys, Runyon and Cox, got in the car on the corner. We drove the car to North Fort Worth. We had a blowout and fixed it and drove out the Keller road to where a road turns off to Birdville. We drove to Birdville and then to Grapevine and from Grapevine to Dallas. About 8 o'clock the next morning we started out to sell the car. Brock went to a garage to see if he could sell the car. I waited about six blocks up the street. Runyon and Cox waited about three blocks from the garage. Brock came back and said that he had the car sold. He then went to where we had left the car, which was several blocks away from us. We walked to within about one block and saw that Brock got the car all right, and when he came on back toward the garage we came back to where we had been waiting. Brock went to the garage. I have not seen him any more since that time until this morning. When Brock did not come back I walked by the garage but did not see him or the other boys, so I thought that I had been beat out of my part of the proceeds of the sale. I then came back and caught an interurban car and came back to Fort Worth. I did not know that they had been arrested. I did not know who owned this car."

The State also proved that on said road on the route appellant stated in his confession he and the others took said car from Fort Worth to Dallas, some of the surgical instruments and papers of Dr. Cloud were found and fully identified by Dr. Cloud as those that were in the automobile at the time it was stolen. The evidence was ample and clearly sufficient to establish appellant's guilt.

Appellant has a very meager bill of exceptions objecting to the testimony of Mr. Morelock wherein he stated the number of said automobile, which he had bought in Dallas on the morning of February 6th. This was the number of Dr. Cloud's machine. This testimony was admissible as tending to show the identity of the car.

He has another like meager bill objecting to the testimony of Dr. Cloud to the effect that at the time his car was stolen he had said surgical instruments and papers therein which he in a day or two afterward recovered, some of them from parties who had found them along the road where said automobile had been driven from Fort Worth to Dallas, and himself found some of them along the same road. This testimony was clearly admissible as tending to show the identity of the stolen machine, and also to corroborate the appellant in his written confession of the route he and the others went in said machine from Fort Worth to Dallas.

Testimony of Mr. Bewley that he found some of those papers along

said route, which were identified, claimed and delivered to Dr. Cloud was admissible.

The confession of appellant, which was introduced by the State, showing that some or all of said persons whom appellant confessed were with him at the time said automobile was stolen and also with him in Dallas when the machine was sold early the next morning, was clearly sufficient, together with the other circumstances to show that some or all of them were principals with him in the theft of said machine. The court, therefore, did not err in telling the jury who were principals, as defined by the statute and submitting that issue. So that appellant's objection to the court submitting any charge at all on the subject of principals is without any merit. He claimed that the evidence did not raise any such issue. As stated, the evidence did raise such an issue so as to make it proper for the court to submit it to the jury.

Appellant claimed that he did not make said confession voluntarily and willingly, but in substance that he was forced to do so, and that he did so because the assistant county attorney and other officers promised him immunity if he would make the confession. The great preponderance of the testimony by several wtinesses on this issue was clearly against him. The court, however, told the jury that if said confession was not voluntarily and willingly made to wholly disregard it and not consider it for any purpose.

Appellant and his wife and mother testified to what would have been sufficient to have established an alibi for him if believed by the jury. The court properly submitted that issue to the jury and the jury found against him on ample evidence to sustain the conviction.

The record herein is clearly without any reversible error. The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### January 23, 1918.

PRENDERGAST, JUDGE.—Appellant's sole ground for rehearing is that there was a direct conflict between the charge of the court on the subject of principals and that of alibi.

In the original opinion we gave the testimony which clearly showed that appellant, with three or four other persons, entered into an agreement to steal an automobile and sell it and divide the proceeds; that they went on a hunt for one on the streets of Fort Worth under that agreement and found the automobile of Dr. Cloud and stole it; took it to Dallas and sold it to divide the proceeds. By his confession, copied in the original opinion, appellant showed that when the four persons who had entered into the agreement stole the car from in front of Dr. Cloud's, that two of them stopped on a corner of the block, he himself went down about the center of the block and another went to the car,

cranked it and drove it along where he was and he got in it and continued to where the other two were and they got in it, and then they took it to Dallas. As a matter of fact, all of them, or at least appellant, was in such proximity to the one who actually cranked the car and started it along so as to be actually present at, and participating in, the taking.

The court's charge on principals was as follows:

"2. All persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually committed by one or more persons, the true criterion for determining who are principals is, did the parties act together in the commission of the offense? Was the act done in pursuance of a common intent and in pursuance of a previously formed design in which the minds of all united and concurred? If so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and in the execution of a common design and intent of all, whether in point of fact all were actually bodily present upon the ground when the offense was actually committed or not."

It is seen this is a mere general definition of who is a principal. In submitting the case to the jury for a finding the court told the jury in the third division that if they believed beyond a reasonable doubt that appellant, acting by himself or together with the other three parties or either of them on or about the date alleged, unlawfully and fraudulently took from the possession of the said Cloud the automobile, etc., to find him guilty.

Then in another paragraph he correctly told the jury what was an alibi and instructed them that if the evidence raised a reasonable doubt in their minds as to the presence of appellant at the time and place of the commission of the offense to acquit him. The evidence raising the issue of alibi, as stated in the original opinion, was the testimony of himself, his wife and mother wherein they testified they were together continuously at his mother's before, at the time and after the time said automobile was stolen. It was proper, therefore, for the court to charge on both the subjects, that is on principals and on alibi. It might be contended under these issues so raised that that part of the charge on principals stating, "whether in point of fact all were actually bodily present upon the ground when the offense was actually committed or not" was harmless and not in conflict with the alibi charge, but if so the jury were not misled by any such conflict. But whether that is true or not, it is unnecessary to decide, because appellant did not at the time make any such objection to the charge of the court, and did not in the objections he did make call the court's attention to this matter or this claimed conflict as the statute expressly requires shall be done.

The record shows that the court prepared and gave to appellant's

attorneys in ample time, his charge, so that if there were any mistakes in it they could point them out to the court by proper exceptions. The only objection they made to the charge was that no charge at all on principals should be given, claiming that the court should not have submitted the issue as he did in the third division of it, because he claimed there was no testimony "showing that the defendant was acting together with Joe Cox, Arthur Brown, Brock or anyone else." It will thus be seen that what appellant objected to was not to any supposed conflict between the definition of who were principals and the charge on alibi, but what he was objecting to was that there was no testimony at all that authorized a charge on the subject of principals.

Besides this, appellant took no bill whatever to the court's not complying, if he did not, with his objection. This was necessary. All he did was to merely make this objection. It is not shown what changes, if any, the court made in its charge, but apparently by not taking a bill appellant acquiesced in the court's charge.

Before the amendment of article 743 (old 723), Code of Criminal Procedure, by the Act of April 5, 1913, it required an accused to either make an objection to the court's charge when erroneous by a proper bill of exception or in motion for new trial. Under that article, before it was amended, this court had uniformly held, and in a great many cases, that unless a bill of exception was taken to the court's charge during the trial or by motion for new trial, however erroneous the charge might be, this court could not consider it. In Johnson v. State, 42 Texas Crim. Rep., 88, this court in discussing the said article held: "However erroneous the charge of the court may be, appellant having reserved no exception in the court below, either by bill or motion for new trial, they are without remedy at law." And again: "Appellant by neither bill of exceptions nor motion for new trial having complained of the court's charge, we can not review any supposed error in the charge, however erroneous it may be; that article 743 (723), Code of Criminal Procedure, gives appellant a perfect, complete and adequate remedy for the assertion of his rights; and if, through ignorance, neglect, or any other cause, he fails to avail himself of this remedy, we can not review the matter, and appellant is without remedy."

This has been held by this court continuously and in a great many decisions since the Johnson case. See note 23, page 519, 2 Vernon's Criminal Statutes, where a large number of these cases are collated.

The only difference between the said old article 723 and the amendment of it in 1913, is that the amendment requires an accused to make these exceptions and preserve them by a bill before the charge is read to the jury, and unless this is done, this court has uniformly held that it can not consider any objection to the charge made after the trial. Some of these cases so holding are collated in note 64, page 526, 2 Vernon's Criminal Statutes. This is the holding of this court down

to now.  Holder v. State, 81 Texas Crim. Rep., 194, 194 S. W. Rep., 165; Grider v. State, 82 Texas Crim. Rep., 124, 198 S. W. Rep., 579. So that as appellant did not point out to the court below his specific objection and call the court's attention thereto, which he now makes as to the claimed conflict between said charges, he can not avail himself now of any such objection.  He waived it.  Such conflict is not fundamental error.

The motion is overruled.                          *Overruled.*