### M. C. M. MANLEY v. STATE.

No. 2300. Decided February 19, 1913.

**1.—Theft—Evidence—Re-Direct Examination.**

Upon trial of theft over the value of $50, where defendant sought to break the force and effect of the testimony of a material State's witness on cross-examination to show ill-will towards defendant, there was no error in permitting the State, on re-direct examination, to explain each of the transactions testified about on cross-examination.

**2.—Same—Rule Stated.**

It has always been the rule that if it is sought to discredit a witness on cross-examination, that he may state the real facts connected with the questions inquired about and by which it is sought to impair his credit, on re-direct examination. Following Tippett v. State, 37 Texas Crim., Rep. 186.

**3.—Same—Case Stated—Limiting Testimony.**

Where the defendant illicited from the State's witness on cross-examination that he had aided those who tried to have defendant's certificate as a teacher cancelled, etc., for the purpose of affecting his credibility as a witness, it was permissible for the State to show that it was not a wanton and malicious act and to let the witness state the reasons that impelled him to such act, and there was no reversible error in not limiting this testimony. Following Schwartz v. State, 53 Texas Crim. Rep., 449, and other cases.

**4.—Same—Evidence—Fruits of Crime—Acts of Defendant.**

Upon trial of theft of money over the value of $50, there was no error in admitting testimony that immediately after the arrest of defendant, the latter requested the witness to carry him to the bank and that when he got there, he talked with the banker and deposited with him $800, part of which was that alleged to have been stolen; this was admissible under Article 810, Code Criminal Procedure. Following Martin v. State, 57 Texas Crim. Rep., 595, and other cases.

**5.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of theft of money over the value of $50, the evidence was circumstantial and the court, in his charge, properly applied the law to the

facts of the case and gave a proper charge on circumstantial evidence, there was no error. · Following Mosely v. State, 59 Texas Crim. Rep., 90, and other cases.

**6.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.— Article 841, Code Criminal Procedure.**

Where, upon trial of theft of property of the value over $50, State's counsel, in his argument, stated that defendant was not put on, in connection with his argument on defendant's reputation, the same was an allusion to defendant's failure to testify; especially, as the court refused to hear the testimony on this point on motion for new trial, which defendant offered to submit orally instead of by affidavit.

**7.—Same—Declarations of Third Party.**

Conversations between the witness and third parties in the absence of the defendant are inadmissible in evidence, having no direct connection with the offense.

Appeal from the District Court of Rains. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of theft over the value of $50; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*O. H. Rodes* and *W. W. Berzett* and *Wynne, Wynne & Gilmore,* for appellant.—On question of limiting testimony: Coker v. State, 35 Texas Crim. Rep., 57; Owens v. State, 35 id., 345; Wilson v. State, 37 id, 373; Foster v. State, 28 Texas Crim. App., 45; Washington v. State, 17 id, 197.

On question of depositing money with banker: Coker v. State, 35 Texas Crim. Rep., 57; Littlefield v. State, 24 Texas Crim. App., 167; Moody v. State, 24 id, 458; Maines v. State, 23 id, 568; Nalley v. State, 28 id, 387; Britain v. State, 52 Tex. Crim. Rep., 169; 105 S. W. Rep., 817.

On question as to statements of defendant under arrest: Gaston v. State, 55 Texas Crim. Rep., 270; Quintana v. State, 29 id, 401.

In question of allusion to defendant's failure to testify: Brown v. State, 57 Texas Crim. Rep., 269.

On question of hearsay testimony: Coker v. State, 35 Texas Crim. Rep., 57; Britain v. State, 52 Tex. Crim. Rep., 169; 105 S. W. Rep., 817.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of theft of property of more than $50 in value, and his punishment assessed at seven years confinement in the State penitentiary.

There are many bills of exceptions in the record, but in his brief appellant presents but few of them, and we will discuss first those presented in the brief.

The first relates to the witness Dowdle Jackson being permitted to

give certain testimony and the failure of the court to limit it in his charge. This witness was a very material witness for the State, and testified to facts which would authorize the jury to find that he saw appellant taking the stolen money away at the time of the theft. To break the force and effect of this testimony, on cross-examination appellant, through his attorney, sought to show that this witness had ill-will towards appellant, was prejudiced against him, and his testimony was necessarily biased thereby. On cross-examination, at appellant's instance, he testified that he "did not love appellant as a nephew; that he was against appellant when Pitt Bridges and others tried to have his (Manley's) certificate cancelled to teach school; that witness believed appellant had stolen money from him on several occasions; one time $800; that there were steps taken to have Manley expelled from the Masonic lodge, and the part witness took in such action." All this testimony was adduced on cross-examination to show an intense ill-will on the part of witness towards appellant and thereby discredit the testimony he had given on direct examination on behalf of the State.

On redirect examination the State was permitted to have the witness explain each of these transactions and his connection herewith, the most damaging explanation being that at the time Pete Bridges and others were trying to have appellant's certificate cancelled, and when he said he (witness) was with them in such action, witness explained that appellant was charged with having illicit intercourse with two of his pupils, Pete Bridges' daughter and Mack Luke's daughter. That he considered such conduct wrong, and for this reason he (witness) was with Bridges and Luke and against appellant in that controversy. Witness also testified that the Masonic lodge instituted proceedings to expel appellant on account of this theft, and at the time such proceedings were instituted and before the trial in the Masonic lodge, the money was returned to the owner, being found by a sister-in-law of appellant at virtually the same place from which it was alleged to have been taken, when the proceedings in the lodge were dropped; that it was some twelve or fifteen years prior to this trial when witness accused appellant of stealing money from him. Appellant objected to all this testimony adduced on redirect examination, on the ground the testimony related to different offenses and on many other grounds. This question has been frequently before this court, and it has always been the rule that if it sought to discredit a witness on cross-examination, on redirect examination he may state the real facts connected with the question inquired about and by which it is sought to impair his credit. In the case of Tippett v. State, 37 Texas Crim. Rep., 186, Judge Henderson, in writing the opinion of the court. says: "In our opinion it would be exceedingly unfair to authorize the State, by this method of cross-examination, to impeach a witness by showing that he was then under a criminal charge or accusation, and not permit the defendant, in order to bolster his witness

against such an assault, to show by said witness any circumstances or explanation that would go to relieve the witness of the imputation of untruthfulness or want of credit thus cast upon him by the State. We would not be understood as holding that the court would be authorized to enter into an investigation of the merits of this collateral issue, but we do hold, where this method of impeachment of a witness is resorted to on cross-examination, that, on the re-examination of the same witness, defendant should be permitted to show such explanatory circumstances, in connection with the matter inquired about, as would go to remove the implication of untruthfulness, and serve to reinstate the witness. This case is an apt illustration of the fairness of the rule. Here, in order to discredit the witness, the State was permitted to show that he was under indictment for the theft of three head of cattle. This left the witness under a cloud. He should have been permitted to state on his re-examination that he was a bona fide purchaser of said cattle, and had not stolen them. The accusation, with the explanation made by the witness, would then all be before the jury, who, in passing upon his credit, would take all the facts into consideration.''

So in this case, when the appellant elicited from the witness, on cross-examination, that he had aided those who tried to have appellant's certificate as a teacher cancelled, etc., for the purpose of affecting his credit as a witness, it was permissible for the State to show that it was not a wanton and malicious act, but let witness state the reasons that impelled him to such action. Not whether appellant was guilty of such other offense and the court did not permit that inquiry, but the reasons for his conduct by which appellant sought to impair his credit. It is always proper when one seeks to show that a witness is unworthy of credit, on cross-examination, by eliciting certain facts tending to accomplish that purpose, to let the real facts be adduced to let the jury judge if the circumstances are such as in fact affect his credit. Appellant insists that if it was permissible to adduce this testimony on redirect examination, the court should have instructed the jury they could consider such matters only in passing on the credibility of the witness Dowdle Jackson, and for no other purposes. It perhaps would have been proper for the court to have so instructed the jury, but as nothing elicited could have been of any probative force in showing appellant's guilt of the charge for which he was being tried, nor could the jury have been misled into convicting appellant for such other offenses, the failure to limit the testimony would not present reversible error. (Carroll v. State, 58 S. W. Rep., 340; Brown v. State, 24 Texas Crim. App., 170; Schwartz v. State, 53 Texas Crim. Rep., 449; Thompson v. State, 55 Texas Crim. Rep., 120; Waters v. State, 54 Texas Crim. Rep., 327, and cases cited in Moore v. State, 65 Tex. Crim. Rep., 453; 144 S. W. Rep., 598, on motion for rehearing.) If the testimony introduced to affect the credit of a witness could be held to have any probative force as tending to show the guilt of the person of the crime for which he was being tried, or the jury was

probably misled into convicting him of such other offense, and not the offense for which he was being tried, it would be reversible error to fail to limit the purposes for which said testimony was admitted, otherwise it does not do so. This is the line of distinction running through all of our reports, and is the correct rule.

The court permitted the witnesses Will Whittle, S. K. McCallon and Homer McCallon to testify that immediately after the arrest of appellant by Whittle that he (appellant) requested him to carry him to the McCallon bank, and when he got there that he called S. K. McCallon to one side, talked with him and then deposited with the banker $800. · As by circumstances this is shown to be a part of the money for which appellant was being prosecuted for stealing, there was no error in admitting this testimony. Article 810, Code of Criminal Procedure, provides that if a person under arrest makes statements which tend to the finding of stolen property, such statements are admissible even though he be under arrest at the time of making such statements. In this case the acts, conduct and statements of appellant led to the finding of $800, which was identified, as nearly as it was possible to identify money, as a part of the stolen money. It was of the character and kind, and its condition was such as to lead one to almost conclusively know that it was a part of the money alleged to have been stolen, and under such circumstances there was no error in admitting his statements in evidence. (Martin v. State, 57 Tex. Crim. Rep., 595; 124 S. W. Rep., 681; Minu v. State, 60 Tex. Crim. Rep., 86; 131 S. W. Rep., 320; Smith v. State, 53 Texas Crim. Rep., 643; Collins v. State, 24 Texas Crim. App., 141; Johnson v. State, 44 Texas Crim. Rep., 332; Fielder v. State, 40 Texas Crim. Rep., 184; Speights v. State, 1 Texas Crim. App., 551; Brown v. State, 26 Texas Crim. App., 330.

The court correctly instructed the jury the law that this was a case depending on circumstantial evidence, and properly applied the law to a case of that character, therefore, there was no error in refusing special charge No. 6 requested. The court instructed the jury:

"In this case the State relies on circumstantial evidence for a conviction. In order to warrant a conviction of a crime on circumstantial evidence each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt. All the facts (that is, the necessary facts to the conclusion) must be consistent with each other and with the main fact sought to be proved, and the circumstances, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused, and no other person, committed the offense charged.

"But in such case it is not sufficient that the circumstances coincide with, account for and therefore render probable the guilt of the defendant. They must exclude, to a moral certainty, every other reasonable hypothesis except the guilt of the accused." (Mosely v.

State, 59 Tex. Crim. Rep., 90; 127 S. W. Rep., 178; Reeseman v. State, 59 Tex. Crim. Rep., 430; 128 S. W. Rep., 1126; Trevino v. State, 38 Texas Crim. Rep., 64; Boggs v. State, 38 Texas Crim. Rep., 82; Baldez v. State, 37 Texas Crim. Rep., 413; Henderson v. State, 50 Texas Crim. Rep., 266; Hill v. State, 37 Texas Crim. Rep., 415.)

The next question presented is one of more difficulty. The official stenographer swears that he took down the closing speech of the district attorney, and that he used the following language: "I don't know whether he had been a benefactor to his race or not; they say they defied the State to put on any evidence to the contrary. Now Judge Wood and Mr. Berzett are both lawyers of years' experience in this State; they know as well as I know I am standing before you this morning that the State could not put the reputation of this man in issue—why didn't they do it. Yet they will stand up here when they fail to give the State an opportunity to put his reputation in issue and say they defied the State to show that there was anything against him. The State was absolutely powerless to put on a single witness as to his reputation out there in the community where he lived for being a peacable, law-abiding citizen. We could not do it until they first raised the issue and they did not do it; they did not open up his reputation, and they know as well as they know they are in the courthouse this evening, because every lawyer who has practiced law one year in the State knows that is the rule—that the State's mouth is closed as to reputation of defendant unless the defendant first puts his reputation in issue; why didn't they do it instead of standing here trying to get the jury to believe that the State could not do it; they defied the State, they say, and I was sitting here in my chair absolutely watching for the opportunity of showing him up. They didn't put him on; they didn't open it up; they didn't put in his reputation to the criticism of the jury; I ask them now if they want to go into the issue; I am willing; I am ready; I am anxious." Several witnesses also swear that the district attorney referred to the failure of the defendant to testify. The district attorney presented controverting affidavits of the jurors that he did not refer to the matter. When these contesting affidavits were presented the defendant requested the court to permit him to introduce the jurors who had filed the contesting affidavits and were in attendance on court, and cross-examine them in regard to the matter. The court refused to permit him to do so, and refused to hear any testimony. While Article 841 of the Code of Criminal Procedure provides that the court may hear evidence of a contest on a motion for new trial, by affidavit or otherwise, yet we can see no good reason why the court should refuse to permit an oral examination of a witness who has filed an affidavit if it is desired and the witness is in attendance on court. In the bill appellant states that he would prove by said jurors if he had been permitted to place them on the witness stand, that the State's attorney did say, "they didn't put him on," (referring to defendant). This bill is approved without

any qualification. In another bill it is shown that defendant's attorneys in their argument stated that defendant had a good reputation, and if so, State's counsel was justified in referring to the fact that he could not attack his reputation unless defendant saw proper to make that an issue, but he was not authorized to refer to the fact that defendant had not testified in the case in this connection.

Another matter we will call attention to is that Dowdle Jackson was not only permitted to testify, giving his reasons why he favored expelling appellant from the Masonic lodge, but also testify to conversations he had with other members of the lodge in regard to the matter. The defendant not being present, these conversations with others about the action of the lodge were inadmissible. In a number of bills are several conversations had by witnesses with other people when defendant was not present. These conversations should not have been admitted. However, it was proper for the court to admit testimony as to where the money was found and that was returned, and by whom found and by whom returned, but it was not permissible for any witness to testify that Cain or any other person had told him it would be returned under named conditions, unless defendant can in some way be connected with such matters.

We do not deem it necessary to discuss the other matters raised in the motion for new trial, for if this opinion is followed they will not occur again.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*